## LONE STAR GAS CO. et al. v. HARRIS.

### No. 909.

Court of Civil Appeals of Texas. Eastland.

Nov. 27, 1931.

Rehearing Denied Jan. 15, 1932.

Conner & McRae, of Eastland, for appellants.

Grisham, Patterson & Grisham and J. R. Stubblefield, all of Eastland, for appellee.

LESLIE, J.

John G. Harris filed this suit on May 29, 1924, to recover royalties, according to his construction of a certain oil and gas lease executed by him to the Ohio Fuel Oil Company on July 12, 1915. This is the second appeal of the case, the first being recorded in (Tex. Civ. App.) 19 S.W.(2d) 178. The judgment of the trial court was there reversed on the ground that it erred in sustaining a general demurrer to the plaintiff's petition.

The original lease to the Ohio Fuel Oil Company granted and leased plaintiff's premises "for the sole and only purpose of mining and operating for oil and gas." The lease contract specified the term thereof, a nominal consideration, and, in addition thereto, three covenants:

"In consideration of the premises the said lessee covenants and agrees:

"1st. To deliver to the credit of lessor, free of cost, in the pipeline to which it may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"2nd. To pay the lessor $300.00 each year in advance for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the time by making his own connections with the well at his own risk and expense.

"3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of $50.00 per year for the time during which such gas shall be used, said payments to be made each three months in advance."

On November 28, 1923, said lease was duly assigned by the Ohio Fuel Oil Company to the Kokomo Petroleum Company, the former reserving seven thirty-seconds interest in the minerals produced from said lands. A well was 'drilled on the land prior to January 19, 1924, and it produced gas only. For each of the years 1924, 1925, and 1926, the $300 gas royalty provided for in covenant two was tendered plaintiff, but refused by him on the ground that he was entitled to other and greater sums of money under the terms of his lease.

On January 16, 1924, the Kokomo Petroleum Company and Ohio Fuel Oil Company, by written contract, sold and agreed to deliver to the Lone Star Gas Company, at the mouth of wells then drilled or to be drilled on said premises, "all the merchantable gas in its natural state." Such natural gas was thus taken by the Lone Star Gas Company and transported to nearby plants off the premises, and the gasoline content extracted. It is by reason of the foregoing transactions that each of these defendants is brought into this suit and charged with default in paying the royalties which the suit is designed to recover under the construction of the contract placed upon it by the plaintiff.

After the cause was returned to the lower court, Annie A. Harris, wife of John G. Harris, deceased, and executrix of the estate, was substituted as plaintiff, and has amended the pleadings, and the suit differs in some re-

spects from what it was when it reached this court originally. On the last trial the plaintiff sought to recover, not only the $300 annual gas rental for a gas well only, but, in addition, sought to recover one-eighth, etc., of the gasoline (as oil) recovered by the Lone Star Gas Company.

The trial was before the court without a jury and judgment was rendered in favor of the plaintiff against the Lone Star Gas Company on the last theory as for oil converted, and against the Ohio Fuel Oil Company and the Kokomo Petroleum Company on both theories; that is, for gas from a gas well, and the gasoline extracted therefrom also. The defendants resisted recovery under general denial and plea of limitation.

That our disposition of the case may be more readily understood, it becomes necessary to refer, in some measure, to the record on the former appeal (Tex. Civ. App.) 19 S.W.(2d) 178. The allegations of the plaintiff's petition (omitting formal parts), which, in our judgment, rendered it good as against the general denial, were:

"In this connection plaintiff would respectfully represent and show to the court that, by the terms and provisions of said lease, as above quoted, as well as by other terms and provisions of the said lease, all of which are invoked and pleaded as particularly as if herein set forth, that it was contemplated by the parties to said lease, and then and there agreed and understood that the plaintiff should have 1/8th of all the oil produced from the development of said premises and plaintiff would respectfully represent and show to the court that casing-head gasoline and gasoline, is oil within the contemplation of the said contract, and that by the terms and provisions thereof the lessee and this defendant promised and agreed to pay the plaintiff the said royalty as by the contract provided.

"3. That the said defendants have produced large quantities of gasoline from said land. * * *

"5. Plaintiff avers that gasoline is oil under the terms and provisions of Exhibit A, hereto attached and made a part hereof."

On the last trial, the plaintiff's amended petition, after setting out the one-eighth oil royalty provision of the lease, and the $300 annual gas rental provision thereof, alleged:

"That thereafter, on or about the 28th day of November, 1923, the defendant, Ohio Fuel Oil Company, entered into a drilling contract with the Kokomo Petroleum Company * * * for the drilling of certain oil and gas wells upon said land and for the full terms and provisions of said contract reference is here made to a copy of same hereto attached, marked 'Exhibit A,' and made a part hereof.

"6. Thereafter, on or about the 16th day of January, 1924, a gas well was brought in on plaintiff's land above described, which pro-

duced gas in paying quantities, and whereupon the Kokomo Petroleum Company and the Ohio Fuel Oil Company assigned same to the Lone Star Gas Company. * * *

"7. Under the second provision of the royalty contract hereinabove set forth, it was the duty of the defendants in advance to pay to the plaintiff $300.00 per year after the coming in of said gas well, but though often requested the defendants have failed and refused and yet fail and refuse to pay the same, or any part thereof, and to plaintiff's damage in the sum of $1300.00. Plaintiff here sues for the said royalty of $300.00 per year, together with 6 per cent. interest per annum thereon as provided by law from the date or dates that the same became due, and prays for such interest as a part of the damage in connection herewith."

It will be observed that thus far the plaintiff's right of recovery is based upon the fact that the defendants, or some of them, have drilled a gas well on plaintiff's land, and that the well produced "gas in paying quantities," and that they have failed or refused to pay the $300 annual gas rental therefor.

The right to recover an additional sum is claimed under and by virtue of the one-eighth oil royalty provision, and by reason of the fact that the gas produced from said gas well contained gasoline which was extracted therefrom by the Lone Star Gas Company. This additional right of recovery can best be stated by quoting paragraph 8 of the plaintiff's second amended petition, which is as follows: "Plaintiff would further show to the court that under the first paragraph of the lease contract above quoted, the said defendants agreed to deliver to the credit of plaintiff, free of cost, in the pipeline to which the defendants should connect said well, the equal 1/8th part of all oil produced and saved from said premises. In this connection plaintiff would show the court that the defendants, and each of them, have failed and refused to deliver to the credit of the plaintiff, free of cost, in its pipe with which it is connected with said well, said equal 1/8th part of the oil so produced and saved from said premises. The defendant (Lone Star Gas Company) connected its pipeline with said well and at the Desdemona Lone Star Booster Plant, took more than one-half gallon of gasoline per thousand cubic feet from Well No. 2, and then piped the natural gas, together with the remaining oil, from the mouth of said well to its Gordon gasoline plant some 25 miles east of the said well and at said plant, so owned and operated and controlled by the said defendant, separated the remaining oil of more than one-half gallon per thousand cubic feet from the natural gas and appropriated and converted all of the said oil to the use and benefit of the said Lone Star Gas Company, and has failed and refused to deliver to the said plaintiff her equal 1/8th

part of said oil, or to place to plaintiff's credit the value thereof, but has appropriated all of the said oil and all of the value thereof. * * *"

Following this allegation were others, seeking, in the alternative, to recover: (1) one-eighth part of said oil (gasoline so extracted); (2) or one-eighth of the value thereof; (3) or one-eighth of the amount remaining after deducting the reasonable cost of production, etc. Additional statement of pleadings and testimony in the case will follow where deemed necessary to an understanding of the opinion.

On the first appeal, in passing on the proposition that the demurrer should not have been sustained to the plaintiff's petition, we were merely holding that, by indulging reasonable intendments in favor of the allegations of the pleading, the charging part of which is above set out, it was sufficient as against the demurrer to allow a development of the facts bearing on the charge of conversion of oil belonging to the plaintiff. In that we were endeavoring to follow the opinion in the case of Reynolds v. McMan Oil & Gas Company (Tex. Com. App.) 11 S.W. (2d) 778, and the fact that a writ of error was refused by the Supreme Court argues that, in some measure at least, we were correct in so doing. However, in this court's opinion we did not so determine that a lessor could recover the $300 annual gas rental on a gas well as contradistinguished from an oil well producing gas, and at the same time recover the one-eighth of the gasoline manufactured from the gas by virtue of the one-eighth oil royalty provision first above set out. Indulging the reasonable intendments in favor of the plaintiff's petition on the former trial, it could not be said, under the pleadings then under attack, that the converted gas or oil was not being derived from gas from an oil well. It is true, we said in the former opinion [19 S.W.(2d) 178, 179], that, "If such product [that is, gasoline] alleged to have been converted by the defendants and each of them be oil, it is not believed that it be material by what term or name the well from which it is taken be designated; that is, whether it be a gas well, gas from an oil well, or an oil well."

We thought then, and think now, that the expression quoted stated a correct proposition, and that it logically followed from a reasonable and proper construction of the opinion in the Reynolds Case. Also, in that opinion by this court, and whether it was necessary to a decision of the case or not, we did recognize that, under conditions, the right of recovery for gas from a gas well must be limited entirely to the provision of the lease providing the $300 annual gas royalty. In that opinion we stated that, under the Reynolds Case, " * * * it occurs to us that there is but one conclusion to be

reached from the decisions, and that is that under the terms of the appellant's lease in the instant case, and for the considerations noted, the granting clause of the lease placed title to the 'natural gas' in the lessee, and clothed it and its assigns with full and complete authority to sell or dispose of the same without incurring obligations other than may be found in the personal obligation of the lessee to pay the lessor $300 and $50 per year, respectively, under the provisions of sections 2 and 3, setting forth the considerations for the lease."

However, regardless of what was said in our opinion on the former appeal of this case, and regardless of any significance that may be attached to the refusal of a writ of error, it is quite evident that the opinion of our Supreme Court, through the Commission of Appeals, in the recent case of Lone Star Gas Company v. Stine, 41 S.W.(2d) 48, 49, is controlling under the facts and issues presented by this record. In that case the gasoline content about which the litigation revolved "was manufactured from gas which came from the wells as gas." The Court of Civil Appeals at Fort Worth, in its opinion (23 S.W.(2d) 752), followed the opinion in the Reynolds Case and allowed a recovery for such gasoline as oil under the one-eighth oil royalty provision. Upon that record, such a conclusion, to our minds, was logical under the Reynolds Case, even more certainly than it was required that this court should follow the Reynolds Case in disposing of this case on its former appeal, since the question then presented to us merely involved the trial court's ruling on a general demurrer, which necessitated the indulgence of reasonable intendments in favor of the rather general expressions in the pleadings. But, the Commission of Appeals, in interpreting the opinion of the Court of Civil Appeals in the Stine Case, used this language: "As we understand the opinion of the Court of Civil Appeals, it holds that as a matter of law the gasoline manufactured from the natural gas which flowed from the gas company's wells was oil within the meaning of the deeds and 'operating agreement,' supra. We think this holding is error. H. O. & R. Co. v. Poe (Tex. Com. App.) 29 S.W.(2d) 1019, 1020; Magnolia Petroleum Co. v. Connellee (Tex. Com. App.) 11 S.W.(2d) 158."

The deeds and operating agreement construed in that case did not more certainly convey to the lessee the gas produced from gas wells than does the lease contract in the instant case convey the same to the lessee, Ohio Fuel Oil Company, in consideration of the promise by the latter to pay therefor $300 annually, as provided for in the contract. In the Stine Case the gas company had the right to "drill for and develop gas and take the same free from any charge or

royalty," having paid a large consideration for "natural gas" developed under the contract, while in the instant case the lessee acquired the right to all gas from each well where gas only is found by paying $300 each year for the same.

After setting forth the facts in the Stine Case and fully recognizing the plaintiff's claim for gasoline (oil) extracted from gas wells only, the commission, in its opinion, quoted from the Poe Case the following:

"It is difficult to conceive upon what theory defendant in error was entitled to recover for gasoline which could have been manufactured from gas produced from a gas well, in the face of the provision in the lease that 'lessee agrees to pay the lessor at the rate of $250 each year, payable quarterly in advance, for the gas from each well where gas only, is found, while the same is being used off the premises.' * * *

"Plaintiff in error acquired the right to use the gas produced from a gas well it might drill on the premises covered by the lease by the payment of the agreed rental of $250 per annum. Having bought and paid for such gas it owned the same, including all of its constituent elements, and therefore had the lawful right to make such use of it as it might deem proper. Wilson v. King Smith Rfg. Co., 119 Okl. 256, 250 P. 90; Shaw v. Fender, 138 Ga. 48, 74 S. E. 792; McRae v. Smith, 164 Ga. 23, 137 S. E. 390; Magnolia Petroleum Co. v. Connellee, supra."

The application of the principles stated in the excerpt to the facts of that case, as well as this one, is apparent, and the further significant statement is taken from that opinion: "The evidence in this case conclusively shows that the gasoline in controversy here was manufactured from gas which came from the wells as gas. This gasoline was separated from the gas and became liquid only when it was subjected to the manufacturing process shown above. It is true that the gasoline element was in the gas when it came from the well, but it was then in gaseous form, that is, it was an element or component part of the natural gas, and gas or natural gas was the thing conveyed by the deeds. The legal effect of the deed was to convey 'all natural gas,' and by the term 'natural gas' is meant all the constituent elements composing the same. The gas company, having become the owner of 'all natural gas' in or under this land, has the right to make such use thereof as it sees fit. It may sell the gas in its natural form as it came from the earth, or it may split it into its constituent elements and sell such elements, including the gasoline."

As before observed, the pleadings and the undisputed testimony disclose that the gas, as it came from the well on the plaintiff's land, came from a gas well as such. That fact being determined, the rules stated in the Stine Case control the disposition of this appeal, and we held that the original lessee acquired said gas with its constituent elements, together with the right to dispose of the same.

On the record here presented, we have not considered it profitable to refer to or undertake to discuss the alleged conflicts in the opinions to be found in the Reynolds and Connellee Cases. If the Stine Case does not overrule the Reynolds Case, it certainly modifies it in material respects. Be that as it may, we endeavor to follow what we consider the latest authorized expressions of the Supreme Court upon the question.

It follows from what has been said that the plaintiff's right to recover the $300 annual gas rental, aggregating the sum of $910.50, as stated in the judgment, is established, and to that extent the judgment of the trial court is affirmed as against the defendant Ohio Fuel Oil Company and the Kokomo Petroleum Company, but under the pleadings and the testimony, and in the light of the opinion in the Stine Case, she is precluded from any recovery for the gasoline under the one-eighth oil royalty provision of the lease. Such recovery would be in the nature of a double recovery for an element of gas theretofore sold in its entirety, together with the right of disposal.

We now consider whether or not the defendant's plea of limitation precludes recovery of any amount whatever under the $300 annual gas rental provision. This suit was originally filed May 29, 1924, and the appellant contends that nowhere therein did the plaintiff seek to recover said gas rental. Its proposition very clearly follows the record and presents the point in this language: "The undisputed evidence on the trial of this cause clearly showing that appellee, executrix of the estate of John G. Harris, for the first time, to-wit: On November 18th, 1930, sought a recovery of the Ohio Fuel Oil Company for the annual rentals of $300.00 for the years 1924, 1925, and 1926, as provided for by the terms of the oil and gas lease involved herein, as an added consideration for gas produced from a well drilled on the lands in question, producing gas only, and that under the terms of said lease and the evidence said rentals matured annually on January 19th, 1924, 1925 and 1926, therefore said several sums of money were clearly barred by the four years statute of limitation, and it was material error for the trial court to render judgment against the Ohio Fuel Oil Company for a recovery of the same or any part thereof, the four years statute of limitation having been timely interposed by said appellant."

We do not think there is any merit in this proposition, especially in view of the recent act of the Legislature, to be found in chap-

ter 115, General Laws, Regular Session, 42d Legislature, 1931 (Vernon's Ann. Civ. St. art. 5539b). It is there provided: "Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence."

Conceding that the plaintiff, in her second amended petition, filed November 18, 1930, for the first time specifically claimed a right to recover the $300 annual gas royalty by virtue of that provision of the lease contract, nevertheless, such action on the plaintiff's part amounted to no more than a subsequent amendment, changing some of the facts or grounds of liability in the original suit embracing a cause of action filed at a time when the same was not subject to a plea of limitation. We do not regard the second amended petition in the respect complained of as wholly based upon and growing out of a new, distinct, or different transaction or occurrence from that evidenced by the original petition.

The different appellants have in most respects made common cause in so far as the controlling assignments of error and propositions of law are concerned. They have not been dealt with separately, but considered together.

For the reasons assigned, the judgment of the trial court as against the Ohio Fuel Oil Company, the Kokomo Petroleum Company, B. I. Kudell, and J. L. Lary will be affirmed in so far as it grants the plaintiff a recovery of $910, the past due annual gas royalties under the second covenant of the lease above set out. That portion of the judgment which grants the plaintiff a recovery against the Ohio Fuel Oil Company, Kokomo Petroleum Company, and the Lone Star Gas Company for $1,038.75 for the value of the gasoline extracted from said gas is here reversed, and in that respect judgment is rendered in favor of the said defendants against the plaintiff. In other respects, the judgment of the trial court is also affirmed. It is so ordered.

FUNDERBURK, J. (dissenting in part).

In my opinion the pleadings in this case will not support a judgment for plaintiff upon either of the two causes of action attempted to be alleged. A judgment without such support is so fundamentally erroneous that it is our duty to take notice of it, even in the absence of an assignment of error. One cause of action which plaintiff attempted to allege was for a breach of the first covenant in the lease, set out in the majority opinion, which obligated the lessee to deliver to the lessor "the equal one-eighth part of all oil produced and saved from the leased premises." No cause of action upon that covenant could exist unless oil was produced, nor be alleged without alleging, in effect, that oil had been produced. The other cause of action sought to be alleged was for breach of the second covenant in the lease, set out in the majority opinion, which obligated the lessee to pay to the lessor $300, a year as a royalty "for the gas from each well where gas only is found." No cause of action upon that covenant could exist unless one or more wells produced gas only, and of course could not be alleged without alleging, in effect, the existence of one or more wells which produced gas only. The pleading alleged that only one well was drilled, and that it was a gas well. The lease set out as an exhibit to the pleading showed that there was a third covenant which obligated the lessee, "To pay lessor for gas produced from any oil well and used off the premises * * * $50.00 per year." This exhibit, showing a distinction made as to the royalty for the gas from an oil well and the gas from a gas well, considered together with the claim in the pleading for $300 royalty instead of $50 royalty, necessarily shows that the allegation of a gas well meant a well producing gas only. The two causes of action attempted to be alleged were not averred in separate counts, or one alternative to the other. Plaintiff asserted not one or the other, but both. The judgment of the trial court awarded recovery upon both. The judgment awarded plaintiff recovery of $1,038.74 to satisfy the claim for one-eighth of the oil produced from the only well on the lease. It also awarded her recovery for $910.50 to satisfy her claim for the gas royalty of $300 per year for the gas produced from a well producing gas only, but which, nevertheless, was the same well from which the oil was alleged to have been produced. In other words, to recover upon the last-named claim it was necessary for plaintiff to prove that the one and only well produced gas only, and in order to recover upon the other cause of action it was necessary for plaintiff to prove that the said well produced oil. In order to recover upon either cause of action, it was necessary that there be allegations of facts to which the evidence could apply as proof of same. It is perfectly obvious that the pleading contained contradictory and inconsistent averments of material facts. That a pleading is insufficient to state a cause of action, where the averment of material facts is contradicted by other allegations in the same plea or count, is an elementary principle of law. Towne's Texas Pleading, p. 425; Hillebrant v. Booth, 7 Tex. 501; Steinback v. City of Galveston (Tex. Civ. App.) 41 S. W. 822; Barry v. Screwmen's

Benev. Ass'n, 67 Tex. 250, 3 S. W. 261; Kynerd v. Security National Bank (Tex. Civ. App.) 207 S. W. 133; Rowe v. Horton, 65 Tex. 89.

As said in Hillebrant v. Booth, supra, "It is an elementary and primary requisite of a good plea, that it be capable of proof, * * * if it judicially appear to the Court, from the defendant's own admissions or statements in his plea, that it is untrue, it will be of no validity. If the averments be inconsistent, and thus contradict and falsify themselves, they cannot be susceptible of proof. A plea setting up, as a defence, failure of consideration, which alleges that such failure consisted in the *existence* and *non-existence of a given fact* [italics ours], presents, on its face, an absurdity, and, of consequence, must be invalid."

How could plaintiff prove her alleged cause of action to recover the $300 per year gas royalty? One essential fact to be proved would be that the well produced gas only. If the proof showed that it produced oil and gas, the $300 could not be recovered because the contract in such case provided a different amount, and one which the pleading did not seek to recover. Proof that the well produced gas only would directly contradict and deny the allegations that the well produced oil. On the other hand, proof that the well produced oil would just as certainly and directly contradict and deny that it produced gas only. In other words, if the evidence proved the allegations intended to show one of the two causes of action, the same evidence would affirmatively and conclusively disprove the other. To hold that such a pleading would support a judgment would, in my opinion, be tantamount to holding that it is wholly immaterial what is alleged in a pleading, and that a pleader can never be bound by any allegation he may make. The writer hopes that the undoubted tendency to disregard the rules of pleadings has not progressed to such an extent.

The majority opinion takes no notice of this question of the sufficiency of the pleading to support the judgment. It naturally would not if the court was of the opinion that the pleading was sufficient to state a cause of action. The conclusion of the majority that the plaintiff was not entitled to recover upon the claim based upon the covenant to deliver one-eighth of the oil shows, inferentially, that it is their opinion that the pleading was insufficient to state a cause of action upon that theory. But whether the pleading, not considering the conflicting allegations, was sufficient to state a cause of action upon that theory, is wholly immaterial upon the point under discussion. The facts alleged to support a claim for the value of oil produced from the well, even if insufficient to state any cause of action, were none the less just as certainly contradictory and inconsistent with the other facts alleged as if, but for such contradictions, they alleged a sufficient cause of action.

The writer, independently of the matter of contradictory and inconsistent allegations already discussed, is disposed to concur in the conclusion that the pleadings stated no cause of action for one-eighth of the gasoline under the oil royalty provision, but such conclusion results from slightly different considerations. Other than as the question may be affected by the inconsistent allegations, which were not involved upon the former appeal, the plaintiff, it seems to me, has pleaded the same cause of action based upon the covenant to deliver one-eighth of the oil that was pleaded before and has pleaded it just as fully and well. The sufficiency of the pleading to state a cause of action was sustained by this court upon a divided opinion. The Supreme Court refused a writ of error. Ordinarily, under the circumstances, the former opinion would be the law of the case. The majority opinion expresses the view that, as applied to this case, the recent decision in Lone Star Gas Company v. Stine (Tex. Com. App.) 41 S.W. (2d) 48, has the effect of overruling the case of Reynolds v. McMan Oil & Gas Co. (Tex. Com. App.) 11 S.W.(2d) 778; Id. (Tex. Com. App.) 14 S.W.(2d) 819, and the former opinion of this court, 19 S.W.(2d) 178, which was based solely upon the McMan decision, or at any rate, renders said decisions no longer applicable to this case. I doubt if such effect was intended by the Supreme Court. The opinion in the Stine Case says: "The Court of Civil Appeals holds that the instant case is ruled by the holding of Section B of the Commission, speaking through Judge Speer, in Reynolds v. McMan Oil & Gas Co., 11 S.W.(2d) 778. We have carefully examined that opinion in the light of the contract there construed and think that a correct conclusion was reached, as applied to that contract construed in the light of that record." There is thus affirmatively shown, it seems to me, an intention of the court not to overrule the McMan Case. On the former appeal in the instant case the writer concurred in the view that, if the McMan Case correctly declared the law as applicable to the facts of that case, it was likewise applicable to the facts of this case, as alleged in the plaintiff's pleading, and the sufficiency of which this court was called upon to determine. The opinion in the McMan Case, in substance and effect, simply declared that the covenant of the lessee to deliver one-eighth of the oil to the lessor constituted an exception of one-eighth of the oil from the conveyance of all the oil and gas; the result being that, when the lessee manufactured gasoline from the gas produced from an oil well, the gasoline being held, as a matter of law, to be oil, the title, therefore, to one-eighth (or at least some portion) thereof, by virtue of said exception,

remained in the lessor and entitled him to recover the same or the value thereof. The only difference in the McMan Case and this case, as then presented to us, was that the former involved the gasoline manufactured from the gas from an oil well, and the latter involved the gasoline manufactured from a gas well. Of course, the writer concurred in the opinion of the majority that such difference involved no legal distinction in the two cases. Certainly, no court would hold as a matter of law that the gasoline manufactured from gas out of an oil well is oil, but that the gasoline manufactured from gas out of a gas well is not oil. If both are oil, which certainly they are, if either is, then how could it be contended, with any degree of logic or plausibility, that, if the exception of one-eighth of the oil from the conveyance of all the oil and gas applied to the gasoline manufactured from the gas out of an oil well, it would not also apply to the gasoline manufactured from the gas out of a gas well. To undertake to predicate a legal distinction upon such a ground would, I think, be a palpable absurdity. It is impossible to ascribe to the Supreme Court a recognition of any such distinction, not only because of its absurdity, but also because the contrary is necessarily implied in the action of that court in refusing a writ of error. The action of this court in sustaining the pleading being based alone upon the decision in the McMan Case, and such pleading involving, as it did, only gasoline manufactured from the gas out of a gas well, the court could not have refused a writ of error on any other ground than that the McMan Case was applicable, because there was no distinction to be made.

Although I agree with the majority that the decision in the Stine Case, if applied to the facts in this case, is contrary to the decision in the McMan Case and to the opinion of this court upon the former appeal, 19 S.W. (2d) 178, yet, as I see it, it is no more certainly so than was the decision in Magnolia Petroleum Company v. Connellee (Tex. Com. App.) 11 S.W.(2d) 158, which the Supreme Court seems to recognize as being distinguishable from tne McMan Case. Under these circumstances a very difficult and delicate question is presented as to what we should regard as authority. It seems to be the view of the majority that the Stine Case, because of its being a later expression, has necessarily overruled the McMan Case, at least so far as it could otherwise apply to this case, and therefore, of course, has overruled the former decision of this court, which for its sole support depended upon the decision in the McMan Case. The writer, while agreeing that, so far as I am able to see, the Stine Case is indistinguishable from this, is no more certain that it is not than I have always been that the decision in the case of Magnolia Petroleum Company v. Connellee was indistinguishable from the McMan Case, as well as this case.

I have concluded that, since the Supreme Court, as shown by the Stine Case, continues to give express approval to declarations of principles which appeal to me as being correct and, so far as I can see, to be applicable to and which should control the decision of the instant case, I am disposed to follow same, although at the same time I am forced to admit that apparently the Supreme Court recognizes some kind of a distinction, which, because perhaps of natural limitation upon my intellectual powers, I am wholly unable to see or understand.

For that reason I concur in the conclusion that, even if they were not contradicted, the allegations designed to show a right to recover for a part of the gasoline manufactured from gas produced from the lease are insufficient to state a cause of action. But for the contradictions above pointed out, I would be able to concur with the majority in sustaining a recovery for the gas rentals. It follows, from what has been said, that I am of opinion that this court properly can only order a reversal of the judgment and a remand of the case.

### On Rehearing.

LESLIE, J.

In the outset it will be observed that the appellants have at no time urged in this court the insufficiency of the plaintiff's pleadings to warrant recovery. In their motions for rehearing the appellants Ohio Fuel Oil Company, and Kokomo Petroleum Company, contend that this court erred in its original opinion in affirming the trial court's judgment against them for the amount of the $300 annual-gas rental. Specifically, the contention is that this court, having found in its original opinion that the appellee Harris, by second amended original petition, filed November 18, 1930, sought then for the first time to recover said rental under that provision of the lease contract, and that such rentals matured January 19, 1924, 1925, and 1926, —it committed material error in holding that, under the terms of the act of the 42d Legislature, c. 115, General Laws, art. 5539b, R. S. (Vernon's Ann. Civ. St.), limitation was not available to said appellants as a bar to recover under the four years' statute of limitation. Subdivision 1, art. 5527, R. S. 1925.

The trial court judgment in the instant case was rendered January 27, 1931. The amended statute took effect August 22, 1931. Apparently the bar of limitation, if any, was complete prior to the taking effect of the statute. If such be the case, certainly the appellants should have the benefit of it, and the amended statute should not be given a retroactive effect. Section 16, art. 1, State Con-

stitution; Mellinger v. Mayor, 68 Tex. 37, 3 S. W. 249.

As contended by the appellants, there was error in so holding, but it does not follow, however, that the judgment permitting the plaintiff to recover the gas royalty rentals is error under the facts of this case. The testimony discloses that, until November 19, 1930, when the defendants filed their second amended original answer, they were at all times tendering to the plaintiff said gas royalty as a complete bar to any other or greater recovery by the plaintiff under the lease contract. About that date, as we interpret the pleadings, the appellants claimed the same by virtue of the limitation statute. Of course, this was but countering the claim of the appellee who, for the first time in her second amended original petition, sought in specific terms to recover this item. Under these circumstances, it is believed that appellants' plea of four years' limitation was not established. The tender during such time was inconsistent with any claim based on limitation. We are of opinion that plaintiff sufficiently pleaded and proved such circumstances as tolled the statute of limitation.

The appellants' respective motions for rehearing are overruled.

We have also considered the appellee's motion for rehearing, and the same is overruled.